PHIL NELSON, OSB No. 013650
phil@slindenelson.com
CHRISTOPHER M. VELEY, OSB No. 004125
chris@slindenelson.com
SLINDE NELSON LLC
111 SW 5th Avenue, Suite 1740
Portland, OR  97204
Telephone:  503-417-7777
Fax:  503-417-4250
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| GARY and KATHY HENIN,<br><br>                                    Plaintiffs.<br><br>v.<br><br>BAC HOME LOANS SERVICING LP,<br>HSBC BANK USA, N.A., and<br>RECONTRUST COMPANY, N.A.,<br><br>                                    Defendants. | CASE NO.  CV-01500-HA<br><br>**FIRST AMENDED COMPLAINT**<br><br>**(Wrongful Foreclosure, Breach of<br>Contract, Breach of the Duty of Good<br>Faith and Fair Dealing, Violations of the<br>Unfair Trade Practices Act)**<br><br>**JURY TRIAL REQUESTED** |

**PARTIES**

1.

Plaintiffs Gary and Kathy Henin reside at 3385 Quail Ridge Court, West Linn, Oregon

97068.  Plaintiffs are the grantors of a certain note and deed of trust further described below.

2.

Defendant BAC Home Loans Servicing LP (aka Bank of America Home Loan Servicing)

(BAC) is a Texas limited partnership and a wholly-owned subsidiary of Bank of America, N.A.

Page 1 – FIRST AMENDED COMPLAINT

with its principal place of business in Texas or California.  Upon information and belief, BAC conducts substantial business in Oregon.

3.

Defendant HSBC Bank USA, N.A. (HSBC) is a commercial lender that conducts substantial business in Oregon and, on information and belief, has its principle place of business in California.

4.

Defendant ReconTrust Company, N.A. (ReconTrust) is a non-deposit trust company and a wholly-owned subsidiary of Bank of America, N.A. with its principal place of business in California.  ReconTrust is a necessary and proper party pursuant to ORS 86.790(4) because it acted as the successor trustee with respect to the non-judicial foreclosure sale at issue in this case.

**FACTS**

5.

Gary and Kathy Henin's longtime primary residence is at 3385 Quail Ridge Court in West Linn, Oregon.  In or around April, 2007, Plaintiffs executed a Fixed/Adjustable Rate Note dated April 9, 2007 (Note), payable to the order of the lender, Mortgage Express, LLC.

6.

The Note was secured by a Deed of Trust dated April 9, 2007 ("Trust Deed"), between the Henins as Grantors, First American Title as Trustee, and Mortgage Electronic Registration Systems, Inc. (MERS) as beneficiary and solely as nominee for the lender Mortgage Express, LLC.  A copy of the Trust Deed is attached hereto as Exhibit A, and a copy of the Note is attached hereto as Exhibit B.

7.

Oregon foreclosure law, and specifically ORS 86.735, sets forth the conditions precedent

Page 2 – FIRST AMENDED COMPLAINT

that must be met in order for a trustee to legally foreclose a trust deed by advertisement and sale (aka non-judicial foreclosure sale). Aside from other requirements not at issue here, ORS 86.735(1) states that a trustee may foreclose a trust deed by advertisement and sale in the manner provided in ORS 86.740 to 86.755 if, and only if: "(1) the trust deed, any assignments of the trust deed by the trustee or the beneficiary and any appointment of a successor trustee are recorded in the mortgage records in the counties in which the property described in the deed is situated;..." [quoting ORS 86.735(1)].

8.

Upon information and belief, Mortgage Express, LLC sold, assigned, or otherwise transferred its interest in the Note and Trust Deed to Countrywide Home Loans, Inc. in or about June, 2007. The foregoing assignment of Mortgage Express, LLC's interest in the Trust Deed, or otherwise the assignment of the Trust Deed to Countrywide Home Loans, Inc., was not recorded in the records of Washington County, Oregon, and that assignment, and the foreclosure sale at issue in this case, was therefore contrary to Oregon foreclosure law, and specifically ORS 86.735(1).

9.

Upon information and belief, there were one or more subsequent unrecorded assignments of the Trust Deed to other entities in violation of Oregon foreclosure law, and specifically ORS 86.735(1). The only recorded assignment of the Trust Deed occurred on February 18, 2010 at 1:23 p.m. when MERS granted, conveyed, assigned and transferred all beneficial interest in the Trust Deed to HSBC, as Trustee for the Holders of Deutsche Alt-A Securities Mortgage Loan Trust, Series 2007-1 Mortgage Pass-Though Certificates, C/O BAC Home Loans Servicing, LP, 400 Countrywide Way SV-35, Simi Valley, CA 93065. The assignment was executed on February 16, 2010. A true and correct copy of the aforementioned recorded assignment of the Trust Deed from MERS to HSBC is attached hereto as Exhibit C.

Page 3 – FIRST AMENDED COMPLAINT

10.

At the same time and date of the above-mentioned assignment of the Trust Deed from MERS to HSBC was recorded, HSBC appointed and recorded defendant ReconTrust as successor trustee under the Trust Deed.   The appointment was executed by HSBC on February 16, 2010.  A true and correct copy of the recorded appointment of successor trustee is attached hereto as Exhibit D.

11.

At the same time and date of the above-mentioned recorded assignment of the Trust Deed from MERS to HSBC and recorded appointment of ReconTrust as successor trustee, ReconTrust recorded a Notice of Default and Election to Sell (to non-judicially foreclose the Trust Deed on June 28, 2010), even though all assignments of the Trust Deed had not been recorded as required by ORS 86.735(1).  A true and correct copy of the Notice of Default and Election to Sell is attached hereto as Exhibit E.

12.

In 2009, the conditions of the economy caused the Henins to fall behind in their mortgage payments for the first time.  Mr. Henin lost his primary source of income when his previously successful printing company went out of business.

13.

In February 2010, the Henins received the Notice of Default and Election to Sell described above indicating that BAC (the loan servicer) via its foreclosure arm, ReconTrust, had initiated foreclosure proceedings on their property on behalf of the underlying note holder and purported beneficiary of the Trust Deed, HSBC.  As indicated above, the foreclosure sale date was initially set for June 28, 2010.  The first sale date was postponed and reset to July 8, 2010.

SLINDE NELSON LLC
111 SW 5th Ave., Suite 1740
Portland, Oregon 97204
p. 503.417.7777; f. 503.417.4250

14.

Faced with an inability to make the mortgage payments, the Henins set out to find a buyer for the home rather than letting it go to foreclosure. The Henins owned other parcels of real property and they successfully avoided foreclosure on each of those parcels.

15.

On June 17, 2010, the Henins engaged Go Green Realty (Realtor) to initiate a short sale application with BAC based on an offer to purchase the property for $699,000. BAC confirmed that the Realtor was a BAC approved short sale realtor.

16.

To evaluate short sales and communicate with the homeowner and/or its agents during the short sale process, BAC uses a web based application called the Equator System. The Realtor notified BAC that the appraisal required for the pending short sale had been ordered but would not likely be finished before the initial foreclosure sale date. BAC assured the Realtor that as long as the short sale process was moving forward appropriately, the sale date would be moved.

17.

The July 8, 2010 sale date was in fact postponed and reset to August 9, 2010.

18.

Throughout the month of July, the parties waited for the return of an appraisal, a process that was substantially complicated by a shortage of comparables. As the parties waited, the Realtor made clear to BAC that the buyer would likely be willing to pay more if required to close the transaction.

19.

In late July 2010, BAC assigned a new negotiator to the Henin file.

Page 5 – FIRST AMENDED COMPLAINT

SLINDE NELSON LLC
111 SW 5th Ave., Suite 1740
Portland, Oregon 97204
p. 503.417.7777; f. 503.417.4250

20.

On August 4, 2010, BAC notified the Realtor that it had received a broker's price opinion, but the formal appraisal had not yet been finalized. That same day, BAC submitted a counteroffer of $1.1 million.

21.

BAC again pushed the sale date from August 9, 2010 to September 8, 2010.

22.

Various malfunctions in the BAC online software delayed the submission of the buyer's counteroffer of $810,000. On August 23, 2010, after many days of trying to submit a counteroffer of $810,000, the Realtor learned that BAC had finally received it and was attempting to obtain the formal appraisal.

23.

On September 1, 2010, the Realtor inquired into the status of the short sale and requested confirmation that the September 8, 2010 short sale would be postponed.

24.

That same day, BAC responded:

"Congratulations, the property at 3385 QUAIL RIDGE COURT now has updated valuations and we can move the short sale forward. At this stage, we will be obtaining some internal pieces of information, such as the payoff amount so that we can analyze the offer in comparison to the valuation. You will receive questions or counter offers directly from you Short Sale Specialist. The next status notification will be sent to you once the file is submitted for investor decision. Please remember that our objective is to negotiate for an offer that we believe the investor will approve. All counter offers will delay the process. Also, please be aware that the investor can make changes to the offer and additional stipulations prior to approving the deal."

SLINDE NELSON LLC
111 SW 5th Ave., Suite 1740
Portland, Oregon 97204
p. 503.417.7777; f. 503.417.4250

25.

The Realtor asked on September 1 and September 2, 2010 for confirmation that the above language indicated that the foreclosure sale was postponed. On September 3, 2010, the Henins five day right to cure commenced.

26.

On September 8, 2010, just over one hour before the foreclosure sale was to occur, the BAC Short Sale Specialist contacted the Realtor for the first time since September 1, 2010. The Short Sale Specialist wrote:

> "There is a high likelihood this property will go to sale today. This will be an executive decision. The offer had to be declined as it did not meet acceptable criteria for further consideration. In the event the property is not sold today, please continue to market the property in favor of a more reasonable offer."

Just a few minutes before the foreclosure sale, the Realtor responded: "Our buyer will go up in price just need your team to counter their offer. Please advise."

27.

At 10:00 a.m. on September 8, 2010, the Property was sold at a foreclosure sale for $900,000.

28.

At 10:01 a.m. on September 8, 2010, the BAC Short Sale Specialist sent the Realtor a decline letter. The reason for the decline was stated as follows:

> "The current offer for the property is no longer being reviewed, due to the closing costs. If the buyer and seller agree to have some of these closing costs renegotiated, please send in a revised HUD and the short sale transaction will be reconsidered."

Page 7 – FIRST AMENDED COMPLAINT

29.

Eight minutes later, at 10:09 a.m., the Realtor sent a message to the BAC Short Sale Specialist that the "[b]uyer is willing to pay for closing costs. I can have an updated HUD today. Please advise."

30.

Two minutes later, at 10:11 a.m., September 8, 2010, the BAC Short Sale Specialist responded:

> "The offer was insufficient to be considered. Value and offer were simply too far apart. This property will be going to sale today per our foreclosure department. Should it not sell and becomes an REO you are welcome to contact our Foreclosure and Real Estate Management Department to see if you regain the listing."

31.

At 10:16 a.m. the Realtor wrote that he understood the opening auction bid to be $900,000 and asked whether $950,000 would be considered. Just over thirty minutes later, the Short Sale Specialist stated that the file had been closed.

32.

On September 16, 2010, ReconTrust recorded a Trustee's Deed confirming the foreclosure sale and conveying, albeit contrary to Oregon foreclosure law, the Henins property to HSBC. A true and correct copy of the Trustee's Deed is attached hereto as Exhibit F.

## FIRST CLAIM FOR RELIEF

(Wrongful Foreclosure)

33.

The Henins reallege every paragraph of this complaint.

Page 8 – FIRST AMENDED COMPLAINT

34.

BAC, by its conduct and statements, agreed to forbear from foreclosing on the Property until the short sale process was completed. HSBC is vicariously liable for the actions of its agent BAC.

35.

In exchange for the forbearance agreement, the Henins agreed to attempt to find a buyer and expedite the sale. The Henins expended significant time and effort in doing so, often to the exclusion of engaging in other work.

36.

The Henins relied on the conduct and statements of BAC in failing to seek other options to cure the default or take other actions to prevent the foreclosure sale.

37.

BAC breached the forbearance agreement by conducting the foreclosure sale before it was entitled to in violation of the forbearance agreement.

38.

In addition to the foregoing allegations, the defendants' (BAC, HSBC, ReconTrust) foreclosure was wrongful and defective because defendants did not follow the provisions of ORS 86.735(1), as set forth in the "Facts" section above and as follows:

- There was no recorded assignment of the Trust Deed between Mortgage Express, LLC, or the "beneficiary" identified in the Trust Deed, and Countrywide Home Loans, Inc.

- There were one or more additional assignments of the Trust Deed which were not recorded prior to the foreclosure sale.

- Because the foreclosure sale did not comply with ORS 86.735(1), ReconTrust never possessed any power or legal authority conduct the foreclosure sale or to otherwise convey the Henin's property to HSBC by a Trustee's Deed.

Page 9 – FIRST AMENDED COMPLAINT

39.

The Henins are entitled to the remedy of rescission (setting aside the foreclosure sale) for BAC, HSBC and ReconTrust's wrongful foreclosure. The Henins are further entitled to their damages in an amount to be deemed fair by the jury, statutory damages and penalties and their reasonable attorneys fees. The Henins reserve the right to amend to seek punitive damages.

## SECOND CLAIM FOR RELEIF

(Breach of Contract)

40.

The Henins reallege every paragraph of this complaint.

41.

BAC, by its conduct and statements and in the ways alleged herein, entered into a binding contract not to foreclose on the Property until the short sale process was complete. HSBC is vicariously liable for the actions of its agent BAC.

42.

The Henins provided valuable consideration as alleged herein and performed all conditions precedent and obligations under the agreement.

43.

BAC breached the agreement by conducting the foreclosure sale before it was contractually entitled to in violation of the forbearance agreement.

44.

As a result of BAC's and HSBC's breach of contract, the Henins have been damaged in an amount to be deemed fair by the jury. The Henins are entitled to reasonable attorneys fees pursuant to the loan documents and trust deed.

Page 10 – FIRST AMENDED COMPLAINT

SLINDE NELSON LLC
111 SW 5th Ave., Suite 1740
Portland, Oregon 97204
p. 503.417.7777; f. 503.417.4250

## THIRD CLAIM FOR RELIEF

(Breach of the Duty of Good Faith and Fair Dealing)

45.

The Henins reallege every paragraph of this complaint.

46.

Pursuant to the original note and trust deed or the forbearance agreement, or both, BAC and HSBC owed the Henins a duty of good faith and fair dealing.

47.

BAC and HSBC, vicariously, in one or more of the following ways:

a.    By entering into short sale negotiations in bad faith;

b.    By misrepresenting its willingness to delay the foreclosure sale;

c.    By inducing the Henins to let the five-day cure period pass;

d.    By inducing the Henins not to solicit an increased offer from their current buyer;

e.    By inducing the Henins to stop searching for a new short sale buyer;

f.    By inducing the Henins to stop searching for alternate financing;

g.    By providing the Henins just over one hour of notice prior to the sale at a time when it knew it would not consider a new offer or a financing replacement;

h.    By failing to issue a formal denial of the short sale offer prior to the foreclosure sale;

i.    By violating its own internal short sale and workout procedures;

j.    By engaging in other unconscionable conduct related to the foreclosure proceedings; and

k.    By violating Oregon's foreclosure laws.

Page 11 – FIRST AMENDED COMPLAINT

48.

As a result of BAC and HSBC's breaches of the duty of good faith and fair dealing, the Henins have been damaged in an amount to be deemed fair by the jury. The Henins are entitled to reasonable attorneys fees pursuant to the loan documents and trust deed.

## FOURTH CLAIM FOR RELIEF

(Violations of the Unfair Trade Practices Act, ORS Chapter 646)

49.

The Henins reallege every paragraph of this complaint.

50.

BAC and HSBC are in the lending business. In the course of that business, and as alleged herein, BAC and HSBC willfully violated the Unfair Trade Practices Act in one or more of the following ways:

a.   Employing an unconscionable tactic in connection with the disposition of real estate;

b.   Misrepresenting the characteristics of the loan and forbearance agreement;

c.   Disparaging the ownership characteristics of the Property;

d.   Offering services related to real estate with no intent to provide them;

e.   Making false representations of fact regarding the availability of the forbearance and its intent with respect to foreclosure;

f.   Engaging in deceptive and unfair conduct in the course of the lending relationship; and

g.   Violating Oregon's foreclosure laws.

51.

As a result of BAC and HSBC violations of the Unfair Trade Practices Act, the Henins

Page 12 – FIRST AMENDED COMPLAINT

SLINDE NELSON LLC
111 SW 5th Ave., Suite 1740
Portland, Oregon 97204
p. 503.417.7777; f. 503.417.4250

are entitled to an order rescinding the foreclosure sale, all of the damages BAC and HSBC proximately caused including statutory penalties and enhancements and an award of its reasonable attorneys fees.  The Henins further reserve the right to amend to seek punitive damages.

**WHEREFORE,** plaintiffs pray as follows:

1.      On their First Claim for Relief, plaintiffs seek an order rescinding and setting aside the foreclosure sale, damages in an amount to be deemed fair by the jury and its reasonable attorneys fees.

2.      On their Second Claim and Third Claims for Relief, plaintiffs seek damages in an amount to be deemed fair by the jury and its reasonable attorneys fees.

3.      On their Fourth Claim for Relief, plaintiffs seek an order rescinding the foreclosure sale, all of the damages BAC and HSBC proximately caused including statutory penalties and enhancements and an award of its reasonable attorneys fees.

4.      All other statutory, compensatory, punitive damages as equitable relief deemed appropriate.


Dated this 13th day of May, 2011


SLINDE NELSON LLC


/S/ CHRISTOPHER M. VELEY
Phil Nelson, OSB# 013650
phil@slindenelson.com
Christopher M. Veley
chris@slindenelson.com
Telephone:  503-417-7777
Fax:        503-417-4250

Attorneys for Plaintiffs


Page 13 – FIRST AMENDED COMPLAINT



After Recording Return To:

MORTGAGE EXPRESS
10260 SW GREENBURG RD. STE 830
PORTLAND, OREGON 97223
Loan Number: 3034

Clackamas County Official Records
Sherry Hall, County Clerk          2007-032555

                                          $131.00
0109228620070032555020220
                              04/16/2007 03:26:02 PM
M-TD          Cnt=1 Stn=10 LESLIE
$110.00 $11.00 $10.00

Recorded By
First American Title Insurance Company of Oregon
No. 99826-MM

—————— [Space Above This Line For Recording Data] ——————

# DEED OF TRUST

**MIN:** 100392209070301016

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)  "Security Instrument" means this document, which is dated   APRIL 9, 2007              , together with all Riders to this document.
(B)  "Borrower" is   GARY R. HENIN AND KATHY J. HENIN , AS TENANTS BY THE ENTIRETY

Borrower is the trustor under this Security Instrument.
(C)  "Lender" is  MORTGAGE EXPRESS

Lender is a    OREGON LIMITED LIABILITY COMPANY                          organized
and existing under the laws of   OREGON
Lender's address is  10260 SW GREENBURG RD. STE 830, PORTLAND, OREGON 97223

(D)  "Trustee" is   FIRST AMERICAN TITLE
200 SW MARKET ST STE 150, PORTLAND, OREGON 97201

(E)  "MERS" is  Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.  **MERS is the beneficiary under this Security Instrument.**  MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F)  "Note" means the promissory note signed by Borrower and dated  APRIL 9, 2007          .
The Note states that Borrower owes Lender  ONE MILLION NINE HUNDRED SEVENTY-EIGHT THOUSAND NINE HUNDRED FIFTY AND 00/100            Dollars (U.S. $ 1,978,950.00    ) plus interest.

Borrower Initials:

OREGON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3038 1/01  (02/01/07)                    Page 1 of 14               DocMagic *eForms* 800-649-1362
                                                                         www.docmagic.com

Or3038.mzd

**EXHIBIT A**

Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than MAY 1, 2037

(G)  "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property."

(H)  "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I)  "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | | |
|---|---|---|---|
| ☒ | Adjustable Rate Rider | ☒ | Planned Unit Development Rider |
| ☐ | Balloon Rider | ☐ | Biweekly Payment Rider |
| ☐ | 1-4 Family Rider | ☐ | Second Home Rider |
| ☐ | Condominium Rider | ☐ | Other(s) [specify] |

(J)  "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K)  "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L)  "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M)  "**Escrow Items**" means those items that are described in Section 3.

(N)  "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O)  "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P)  "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q)  "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R)  "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

Borrower Initials:

OREGON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3038 1/01 (02/01/07)                Page 2 of 14                DocMagic *eForms* 800-649-1362
                                                                     www.docmagic.com

Or3038.mzd

**EXHIBIT A**

**TRANSFER OF RIGHTS IN THE PROPERTY**

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
COUNTY                    of                    CLACKAMAS                    :
[Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: 21E36BB-01300

which currently has the address of                    3385 QUAIL RIDGE COURT
                                                                                [Street]

        WEST LINN                    , Oregon        97068        ("Property Address"):
        [City]                                                  [Zip Code]

        TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.
        BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.
        THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

        **UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:
        1.   **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Borrower Initials:

OREGON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          DocMagic *eForms* 800-649-1362
Form 3038 1/01 (02/01/07)                    Page 3 of 14                              www.docmagic.com

Or3038.mud

**EXHIBIT A**

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

   2.   **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

   If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

   Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

   3.   **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

   Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. (b)

Borrower Initials: _____   _____   _____

OREGON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3038 1/01  (02/01/07)                                    Page 4 of 14                    DocMagic *eForms* 800-649-1362
                                                                                              www.docmagic.com

Or3038.mzd

Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

   **4.   Charges; Liens.**  Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

   **5.   Property Insurance.**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater

Borrower Initials: _____

OREGON--Single Family--Fannie Mae/Freddie Mac  UNIFORM INSTRUMENT - MERS
Form 3038 1/01  (02/01/07)                    Page 5 of 14

*DocMagic* *☎800-649-1362*
*www.docmagic.com*

Or3038.mzd

**EXHIBIT A**

or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.  **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Borrower Initials: _____  _____  _____  _____

OREGON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3038 1/01 (02/01/07)                    Page 6 of 14                    *DocMagic eForms* 800-649-1362
www.docmagic.com

Or3038.mzd

**EXHIBIT A**

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8.   Borrower's Loan Application.**  Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan.  Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9.   Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**  If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10.  Mortgage Insurance.**  If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Borrower Initials: _____  _____  _____  _____  _____

**EXHIBIT A**

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to

Borrower Initials: _____    _____    _____

EXHIBIT A

Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to

Borrower Initials: _____  _____  _____

OREGON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3038 1/01  (02/01/07)                          Page 9 of 14

DocMagic *eFarms* 800-649-1362
www.docmagic.com

Or3038.mzd

EXHIBIT A

Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations

Borrower Initials: _____ _____ _____ _____ _____

Or3038.mzd

**EXHIBIT A**

secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Borrower Initials:

Or3038.mzd

**EXHIBIT A**

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall give notice of sale in the manner prescribed by Applicable Law to Borrower and to other persons prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Substitute Trustee.** Lender may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. **Attorneys' Fees.** As used in this Security Instrument and in the Note, attorneys' fees shall include those awarded by an appellate court.

26. **Protective Advances.** This Security Instrument secures any advances Lender, at its discretion, may make under Section 9 of this Security Instrument to protect Lender's interest in the Property and rights under this Security Instrument.

27. **Required Evidence of Property Insurance.**

## WARNING

Unless you provide us with evidence of the insurance coverage as required by our contract or loan agreement, we may purchase insurance at your expense to protect our interest. This insurance may, but need not, also protect your interest. If the collateral becomes damaged, the coverage we purchase may not pay any claim you make or any claim made against you. You may later cancel this coverage by providing evidence that you have obtained property coverage elsewhere.

Borrower Initials: _____ _____ _____ _____

Or3038.mzd

**EXHIBIT A**

You are responsible for the cost of any insurance purchased by us. The cost of this insurance may be added to your contract or loan balance. If the cost is added to your contract or loan balance, the interest rate on the underlying contract or loan will apply to this added amount. The effective date of coverage may be the date your prior coverage lapsed or the date you failed to provide proof of coverage.

The coverage we purchase may be considerably more expensive than insurance you can obtain on your own and may not satisfy any need for property damage coverage or any mandatory liability insurance requirements imposed by Applicable Law.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

X _____ (Seal)
GARY R. HENIN            -Borrower

X _____ (Seal)
KATHY J. HENIN           -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

Witness:

_____

Witness:

_____

OREGON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3038 1/01  (02/01/07)                    Page 13 of 14

DocMagic eForms 800-649-1362
www.docmagic.com

13

Or3038.mzd

**EXHIBIT A**

―――――――――――――――――― [Space Below This Line For Acknowledgment] ――――――――――――――――――

State of Oregon

County of __MULTNOMAH__

This instrument was acknowledged before me on _____ 4-10-07 _____

by __GARY R. HENIN AND KATHY J. HENIN__ _____

_____

_____

OFFICIAL SEAL
J PRICE
NOTARY PUBLIC-OREGON
COMMISSION NO. 396223
MY COMMISSION EXPIRES AUG. 18, 2009

(Seal)

_____
Notary Public - State of Oregon

My commission expires: __8·18·09__

OREGON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3038 1/01  (02/01/07)                    Page 14 of 14

*DocMagic eForms* 800-649-1362
www.docmagic.com

14

Or3038.mzd

**EXHIBIT A**

Assessor's Parcel Number: 21E36BB-01300

After Recording Return To:
MORTGAGE EXPRESS
10260 SW GREENBURG RD. STE 830
PORTLAND, OREGON 97223

Prepared By:

———————————— [Space Above This Line For Recording Data] ————————————

# FIXED/ADJUSTABLE RATE RIDER

### (LIBOR One-Year Index (As Published In *The Wall Street Journal*) - Rate Caps)

DOC ID #:3034

THIS FIXED/ADJUSTABLE RATE RIDER is made this    9th            day of
APRIL   2007        , and is incorporated into and shall be deemed to amend and supplement the
Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned ("Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to
MORTGAGE EXPRESS, LLC, AN OREGON LIMITED LIABILITY COMPANY
("Lender") of the same date and covering the property described in the Security Instrument and located at:
             3385 QUAIL RIDGE COURT, WEST LINN, OREGON 97068
                            [Property Address]

THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST RATE
TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE AMOUNT
BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME
AND THE MAXIMUM RATE BORROWER MUST PAY.

Conv
● MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
INTEREST ONLY
FE-4266 (0603)                    Page 1 of 4                    Initials: _____

1b4266.cw

**EXHIBIT A**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial fixed interest rate of    5.875 %. The Note also provides for a change in the initial fixed rate to an adjustable interest rate, as follows:

## 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of    MAY, 2012    , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding  TWO  AND  250/1000    percentage points (    2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125 %). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than   10.875 % or less than    2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than   10.875 % or less than   2.250  %.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

Conv
• MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
INTEREST ONLY
FE-4266 (0603)                              Page 2 of 4                          Initials:

16

Us4266.cw

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1. UNTIL MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT IS DESCRIBED AS FOLLOWS:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2. AFTER MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION 11(A) ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL INSTEAD BE DESCRIBED AS FOLLOWS:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

Conv
● MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
INTEREST ONLY
FE-4266 (0603)                    Page 3 of 4                         Initials

\7

**EXHIBIT A**

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

**I understand that for the Interest Only Period my monthly payments will not reduce the Principal balance on my loan. My monthly payments after the Interest Only Period will consist of both Principal and interest and will be higher unless I have made additional payments to reduce the Principal balance.**

X _____ (Seal)
GARY R. HENIN                        -Borrower

X _____ (Seal)
KATHY J. HENIN                       -Borrower

_____ (Seal)
                                     -Borrower

_____ (Seal)
                                     -Borrower

Conv
● MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
INTEREST ONLY
FE-4266 (0603)                    Page 4 of 4

18

Us4266.cw

**EXHIBIT A**

Loan Number:  3034

Date:  APRIL 9, 2007

Property Address:  3385 QUAIL RIDGE COURT, WEST LINN, OREGON 97068

EXHIBIT "A"

LEGAL DESCRIPTION

SEE PRE
A.P.N. #: 21E36BB-01300

LOT 187 AND PART OF LOT 186, "CASCADE SUMMIT NO. 6" IN THE NORTHWEST QUARTER OF SECTION 36, TOWNSHIP 2 SOUTH, RANGE 1 EAST, OF THE WILLAMETTE MERIDIAN, IN THE CITY OF WEST LINN, COUNTY OF CLACKAMAS AND STATE OF OREGON, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT A 5/8 INCH IRON ROD WITH A RED PLASTIC CAP SCRIBED "CENTERLINE CONCEPTS, INC." (HEREINAFTER REFERRED TO AS "A 5/8 INCH IRON ROD WITH A CCI CAP") LYING ON THE NORTH LINE OF SAID LOT 186, SAID IRON ROD BEING NORTH 53°30'52" WEST 121.68 FEET FROM A 5/8 INCH IRON ROD WITH A YELLOW PLASTIC CAP SCRIBED "OTAK INC." (HEREINAFTER REFERRED TO AS "A 5/8 INCH IRON ROD WITH AN OTAK CAP") MARKING THE NORTHEAST CORNER OF SAID LOT 186; THENCE SOUTH 13°51'43" WEST 57.03 FEET TO A 5/8 INCH IRON ROD WITH A CCI CAP; THENCE SOUTH 25°52'37" WEST 34.38 FEET TO A 5/8 INCH IRON ROD WITH A CCI CAP; THENCE SOUTH 38° 02'29" WEST 73.62 FEET TO A 5/8 INCH IRON ROD WITH A CCI CAP LYING ON THE NORTHEASTERLY RIGHT OF WAY LINE OF QUAIL RIDGE COURT AND MARKING THE START OF A 176.50 FOOT RADIUS CURVE, CONCAVE NORTHEASTERLY; THENCE ALONG SAID RIGHT OF WAY LINE AND SAID CURVE, THROUGH A CENTRAL ANGLE OF 41°51'42" (WHICH CHORD BEARS NORTH 33°50'17" WEST 126.11 FEET) AN ARC DISTANCE OF 128.96 FEET TO A 5/8 INCH IRON ROD WITH AN OTAK CAP MARKING THE POINT OF TANGENCY OF SAID CURVE; THENCE CONTINUING ALONG SAID RIGHT OF WAY LINE, NORTH 12°54'26" WEST 47.43 FEET TO A 5/8 INCH IRON ROD WITH A OTAK CAP MARKING THE START OF A 40.50 FOOT RADIUS CURVE CONCAVE EASTERLY; THENCE, ALONG SAID CURVE AND CONTINUING ALONG SAID RIGHT OF WAY LINE, THROUGH A CENTRAL ANGLE OF 07°03'35" (WHICH CHORD BEARS NORTH 09°22'38" WEST 4.99 FEET), AN ARC DISTANCE OF 4.99 FEET TO A 5/8 INCH IRON ROD WITH AN OTAK CAP MARKING THE POINT OF TANGENCY OF SAID CURVE; THENCE CONTINUING ALONG SAID RIGHT OF WAY LINE, NORTH 05°50'51" WEST 16.47 FEET TO A 5/8 INCH IRON ROD WITH A CCI CAP MARKING THE MOST WESTERLY CORNER OF SAID LOT 187; THENCE LEAVING SAID RIGHT OF WAY LINE NORTH 68°55'58" EAST ALONG THE NORTHWESTERLY LINE OF SAID LOT 187, 84.19 FEET TO AN 5/8 INCH IRON ROD WITH A OTAK CAP MARKING THE MOST NORTHERLY CORNER OF SAID LOT 187; THENCE SOUTH 53°30'52" EAST ALONG THE NORTHEASTERLY LINE OF SAID LOT 187 AND 186, 97.98 FEET TO THE POINT OF BEGINNING.

TOGETHER WITH AN EASEMENT FOR INGRESS AND EGRESS OVER TRACT "FF" AS DELINEATED ON THE RECORDED PLAT.

DocMagic *eForms* 800-649-1362
www.docmagic.com

19

Or3038.mzd

**EXHIBIT A**

Loan Number: 3034

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 9th day of APRIL, 2007 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to MORTGAGE EXPRESS, LLC, AN OREGON LIMITED LIABILITY COMPANY
(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

3385 QUAIL RIDGE COURT, WEST LINN, OREGON 97068
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in

COVENANTS, CONDITIONS AND RESTRICTIONS OF RECORD

(the "Declaration"). The Property is a part of a planned unit development known as

CASCADE SUMMIT NO. 6
[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

Borrower Initials: _____

MULTISTATE PUD RIDER–Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3150 1/01          Page 1 of 3

DocMagic *eForms* 800-649-1362
www.docmagic.com

Us3150.rid

**EXHIBIT A**

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

Borrower Initials:

MULTISTATE PUD RIDER--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3150 1/01                        Page 2 of 3

*DocMagic eForms* 800-649-1362
*www.docmagic.com*

21

1b3150.rid

**EXHIBIT A**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____ (Seal)
GARY R. HENIN                    -Borrower

_____ (Seal)
KATHY J. HENIN                   -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

MULTISTATE PUD RIDER--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3150 1/01                              Page 3 of 3

*DocMagic* *eForms* 800-649-1362
www.docmagic.com



Us3150.rid

**EXHIBIT A**

MIN: 100392209070301016                          Loan Number: 3034

## InterestOnly ADJUSTABLE RATE NOTE
(One-Year LIBOR Index (As Published in *The Wall Street Journal*) - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

APRIL 9, 2007                    PORTLAND                    OREGON
[Date]                           [City]                      [State]

       3385 QUAIL RIDGE COURT, WEST LINN, OREGON 97068
                          [Property Address]

**1.  BORROWER'S PROMISE TO PAY**
    In return for a loan that I have received, I promise to pay U.S. $ 1,978,950.00 (this amount is called "Principal"), plus interest, to the order of Lender. The Lender is  MORTGAGE EXPRESS, LLC, AN OREGON LIMITED LIABILITY COMPANY (CFL # ML-1952)
I will make all payments under this Note in the form of cash, check or money order.
    I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.  INTEREST**
    Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of   5.875 %. The interest rate I will pay may change in accordance with Section 4 of this Note.
    The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3.  PAYMENTS**
    **(A) Time and Place of Payments**
    I will make a payment every month. I will make my monthly payment on the  1st  day of each month beginning on JUNE 1, 2007  . This payment will be for interest only for the first  60   months ("Interest Only Period"), and thereafter my payments will consist of Principal and interest. I will make my payments every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this note.
    Each monthly payment will be applied as of its scheduled due date, and if the payment includes both Principal and interest it will be applied to interest before Principal. If, on  MAY 1, 2037     , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
    I will make my monthly payments at  10260 SW GREENBURG RD. STE 830, PORTLAND, OREGON 97223
or at a different place if required by the Note Holder.
    **(B) Amount of My Initial Monthly Payments**
    Each of my initial monthly payments will be in the amount of U.S. $ 9,688.61 . This amount may change.
    **(C) Monthly Payment Changes**
    Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

**4.  ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**
    **(A) Change Dates**
    The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of MAY, 2012          , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."
    **(B) The Index**
    Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market (LIBOR), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."
    If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

Initials _____

**EXHIBIT B**

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding    TWO AND 250/1000
percentage points (    2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than    10.875 % or less than    2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than    10.875 % or less than    2.250 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(G) Date of First Principal and Interest Payment**

The date of my first payment consisting of both Principal and interest on this Note (the "First Principal and Interest Payment Due Date") will be the first monthly payment date after the expiration date of the Interest Only Period.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A prepayment of all the unpaid principal is known as a "Full prepayment." A prepayment of only part of the unpaid principal is known as a "Partial Prepayment."

If I make a Partial Prepayment equal to one or more of my monthly payments, my due date may be advanced no more than one month. If I make any other Partial Prepayment, I must still make each later payment as it becomes due and in the same amount. I may make a Full or a Partial Prepayment at any time.

[X] If this box is checked, no prepayment penalty will be charged on this loan.

[ ] If this box is checked, I have selected a loan which has a prepayment penalty. The Prepayment Penalty Addendum attached hereto and made a part hereof defines the terms of the prepayment penalty. The Prepayment Penalty Addendum attached hereto and made a part hereof defines the terms of the prepayment penalty. I understand that by agreeing to pay a prepayment penalty I acknowledge that my interest rate and/or fees are lower than they would be without a prepayment penalty.

**6.    LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.    BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of    15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.000 % of my overdue payment of interest, during the period when my payment is interest only, and of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8.    GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

**EXHIBIT B**

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.   WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.   SECURED NOTE**

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

(A)   UNTIL MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT IS DESCRIBED AS FOLLOWS:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B)   AFTER MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION 11(A) ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL INSTEAD BE DESCRIBED AS FOLLOWS:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Initials:

**EXHIBIT B**

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

I understand that for the Interest Only Period my monthly payments will not reduce the Principal balance on my loan. My monthly payments after the Interest Only Period will consist of both Principal and Interest and will be higher unless I have made additional payments to reduce the Principal balance.

_____ _ (Seal)
GARY R. HENIN                                                   -Borrower

_____ _ (Seal)
KATHY J. HENIN                                                 -Borrower

_____ _ (Seal)
                                                                        -Borrower

_____ _ (Seal)
                                                                        -Borrower

*[Sign Original Only]*

**EXHIBIT B**

AFTER RECORDING RETURN TO:

Foreclosure Department
RECONTRUST COMPANY, N.A.
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063
TS No. 10 -0018763

| Clackamas County Official Records Sherry Hall, County Clerk | 2010-010516 |
| --- | --- |
| | $47.00 |
| 01381499201000105160010012 | 02/18/2010 01:27:20 PM |
| M-TDA       Cnt=1  Stn=10 LESLIE $5.00 $16.00 $16.00 $10.00 | |

## ASSIGNMENT OF DEED OF TRUST

For Valuable Consideration, the undersigned as Beneficiary, hereby grants, conveys, assigns, and transfers to HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE HOLDERS OF DEUTSCHE ALT-A SECURITIES MORTGAGE LOAN TRUST,SERIES 2007-1 MORTGAGE PASS-THROUGH CERTIFICATES, C/O BAC HOME LOANS SERVICING, LP, 400 COUNTRYWIDE WAY  SV-35, SIMI VALLEY, CA 93065, all beneficial interest under that certain Deed of Trust, dated 04/09/2007, executed by GARY R HENIN AND KATHY J HENIN, AS TENANTS BY THE ENTIRETY, Grantor(s), to FIRST AMERICAN TITLE, Trustee, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS. INC, as Beneficiary, recorded on 04/16/2007 as Recorder's fee/file/instrument/microfilm/reception number 2007-032555, Records of Clackamas County, Oregon, describing land. There in: as more fully described in said Deed of Trust.
Together with note or notes therein described or referred to, the money due and to become due thereon, with interest, and all rights accrued or to accrue under said Deed of Trust.

Dated ___ FEB 1 6 2010 ___ , 20 _____ .

State of ____ CALIFORNIA ____ )
                                                         ) ss
County of _____ VENTURA _____ )

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS. INC

By: _____

CHRISTINA BALANDRAN Assistant Secretary

On ____ FEB 1 6 2010 ____ , before me, __ JANET L. KOCH __ , notary public, personally appeared __ CHRISTINA BALANDRAN __ *, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

                                                                        * Assistant
WITNESS my hand and official seal.       Secretary

_____
Notary Public in and for the State of ____ CALIFORNIA
Residing at _____ VENTURA
My Commission Expires: Oct 29, 2011

Janet L. Koch

JANET L. KOCH
Commission # 1776632
Notary Public - California
Ventura County
My Comm. Expires Oct 29, 2011

**EXHIBIT C**

b

## APPOINTMENT OF SUCCESSOR TRUSTEE

KNOW ALL MEN BY THESE PRESENTS, that Gary R Henin And Kathy J Henin, As Tenants By The Entirety, as grantor(s), and First American Title, as the Trustee, and Mortgage Electronic Registration Systems. Inc, is the Beneficiary under that certain Trust Deed dated 04/09/2007, and recorded 04/16/2007, as Recorder's fee/file/instrument/microfilm/reception No. 2007-032555 of the Mortgage Records of Clackamas County, Oregon. The undersigned, who is the present Beneficiary under said Trust Deed desires to appoint a new trustee in the place and stead of the original trustee named above;

NOW THEREFORE, in view of the premises, the undersigned hereby appoints RECONTRUST COMPANY, N.A., whose address is 1800 Tapo Canyon Rd., CA6-914-01-94 SIMI VALLEY, CA 93063 as successor trustee under said Trust Deed, to have all the powers of said original trustee, effective immediately.

In construing this instrument, and whenever the context so requires, the singular includes the plural.

IN WITNESS WHEREOF, the undersigned Beneficiary has executed this document.  If the undersigned is a corporation, it has caused its name to be signed and its seal affixed by an officer or other person duly authorized to do so by its board of directors.

DATED:  **FEB 1 6 2010**      , 2010.

IISBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE HOLDERS OF DEUTSCHE ALT-A SECURITIES MORTGAGE LOAN TRUST,SERIES 2007-1 MORTGAGE PASS-THROUGH CERTIFICATES BY BAC HOME LOANS SERVICING, LP, AS ATTORNEY-IN-FACT

By _____

Name: __CHRISTINA BALANDRAN__
Title:  _Assistant Secretary_

STATE OF_____**CALIFORNIA**_____ )
                                                              ) ss.
County of_____**VENTURA**_____ )

On_____**FEB 1 6 2010**_____, before me,  **JANET L. KOCH** *, personally appeared  __CHRISTINA BALANDRAN__ **, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

* Notary Public
** Assistant Secretary

_____
Notary Public for ____**CALIFORNIA**____
My commission expires: _OCT 29, 2011_
Janet L. Koch

(SEAL)

APPOINTMENT OF SUCCESSOR TRUSTEE
RE: Trust Deed from
GARY R HENIN, KATHY J HENIN and GARY R & KATHY J HENIN
                              Grantor
     To
RECONTRUST COMPANY, N.A.
                    Trustee TS No. 10 -0018763

After recording return to:
RECONTRUST COMPANY, N.A.
C/O RECONTRUST COMPANY, N.A.

JANET L. KOCH
Commission # 1776832
Notary Public - California
Ventura County
My Comm. Expires Oct 29, 2011

Clackamas County Official Records
Sherry Hall, County Clerk

2010-010517

$47.00

0138150020100010517010017

02/18/2010 01:27:20 PM

M-SUBT        Cnt=1 Stn=10 LESLIE
$5.00 $16.00 $16.00 $10.00

Page 1 of 2

ORAPTOFSUC (07/07)

**EXHIBIT D**

After recording return to:
Attn: Foreclosure Department
RECONTRUST COMPANY, N.A.
400 COUNTRYWIDE WAY SV-35
SIMI VALLEY, CA 93065

Clackamas County Official Records
Sherry Hall, County Clerk

**2010-010518**

**$57.00**

01381501201000105180030038

02/18/2010 01:27:20 PM

F-NDE        Cnt=1 Stn=10 LESLIE
$15.00 $16.00 $16.00 $10.00

## NOTICE OF DEFAULT AND ELECTION TO SELL

Reference is made to that certain Trust Deed made by GARY R HENIN AND KATHY J HENIN, AS TENANTS BY THE ENTIRETY, as grantors, to FIRST AMERICAN TITLE, as Trustee, in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC, as Beneficiary, dated 04/09/2007, recorded 04/16/2007, in the mortgage records of Clackamas County, Oregon, as Recorder's fee/file/instrument/microfilm/reception Number 2007-032555, covering the following described real property situated in said county and state, to wit:

PLEASE SEE ATTACHED LEGAL DESCRIPTION

PROPERTY ADDRESS: 3385 QUAIL RIDGE COURT

WEST LINN, OR 97068

There is default by the grantor or other person, or by their successor in interest, owing an obligation, the performance of which is secured by said Trust Deed, or by their successor in interest, with respect to provisions therein which authorize sale in the event of default of such provision. The default for which foreclosure is made is grantors' failure to pay when due the following sums: monthly payments of $9,546.34 beginning 09/01/2009; plus late charges of $477.32 each month beginning 09/01/2009 payment plus prior accrued late charges of $-1,431.96; plus advances of $ 45.00; together with title expense, costs, trustee's fees and attorney's fees incurred herein by reason of said default; and any further sums advanced by the Beneficiary for the protection of the above described real property and its interest therein.

By reason of said default, the Beneficiary has declared all sums owing on the obligation secured by said Trust Deed immediately due and payable, said sums being the following, to wit: $1,949,890.57 with interest thereon at the rate of 5.875 percent per annum beginning 08/01/2009 plus late charges of $477.32 each month beginning 09/01/2009 until paid; plus prior accrued late charges of $-1,431.96; plus advances of $ 45.00; together with title expense, costs, trustee's fees and attorney's fees incurred herein by reason of said default; and any further sums advanced by the Beneficiary for the protection of the above described real property and its interest therein.

| NOTICE OF DEFAULT AND ELECTION TO SELL | For Additional Information: |
|---|---|
| RE: Trust Deed from | Please Contact |
| GARY R HENIN and KATHY J HENIN, | Foreclosure Department |
| Grantor | RECONTRUST COMPANY, N.A. |
| To | RECONTRUST COMPANY, N.A. |
| RECONTRUST COMPANY, N.A., | 1800 Tapo Canyon Rd., CA6-914-01-94 |
| Trustee        TS No. 10 -0018763 | SIMI VALLEY, CA 93063 |
| | (800)-281-8219 |

Notice is hereby given that the Beneficiary and Trustee, by reason of said default, have elected and do hereby elect to foreclose the Trust Deed by advertisement and sale pursuant to ORS 86.705 to 86.795, and to cause to be sold at public auction to the highest bidder for cash the interest in the described property which the grantor had, or had the power to convey, at the time the grantor executed the Trust Deed, together with any interest the grantor or grantor's successors in interest acquired after the execution of the Trust Deed, to satisfy the obligations secured by the Trust Deed and the expenses of the sale, including the compensations of the Trustee as provided by law, and reasonable fees of Trustee's attorneys.

*ORNOD (07/07)*

**EXHIBIT E**

The sale will be held at the hour of 10:00 AM , in accordance with the standard of time established by ORS 187.110 on Monday, June 28, 2010, at the following place: in the courtyard located directly to the north of the main entrance of the Clackamas County Courthouse, 807 Main Street near the arbor.,
, which is the hour, date and place last set for the sale.

Notice is further given that any person named in ORS 86.753 has the right, at any time prior to five days before the date last set for the sale, to have this foreclosure proceeding dismissed and the Trust Deed reinstated by payment to the Beneficiary of the entire amount then due (other than such portion of the principal as would not then be due had no default occurred) and by curing every other default complained of herein by tendering the performance required under the obligation or Trust Deed, in addition to paying said sums or tendering the performance necessary to cure the default, by paying all costs and expenses actually incurred in enforcing the obligation and Trust Deed, together with trustee's and attorney's fees not exceeding the amounts provided by ORS 86.753.

In constructing this notice, the singular includes the plural, the word "grantor" includes any successor in interest to the grantor as well as any other person owing an obligation, the performance of which is secured by said Trust Deed, and the words "Trustee" and "Beneficiary" include their respective successors in interest, if any.

RECONTRUST COMPANY, N.A.

_Karla Mata_

Karla Mata, Team Member

STATE OF_____CALIFORNIA_____)
                           ) ss.
COUNTY OF_____VENTURA_____)

On ___FEB 1 6 2010___ , before me, **JANET L. KOCH** , notary public, personally appeared _Karla Mata, Team Member_ , personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_Janet L. Koch_

Notary Public for _____CALIFORNIA_____
My commission expires: _Oct 29, 2011_
    Janet L. Koch

(SEAL)

> JANET L. KOCH
> Commission # 1776832
> Notary Public - California
> Ventura County
> My Comm. Expires Oct 29, 2011

**THIS IS AN ATTEMPT TO COLLECT A DEBT AND INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. HOWEVER IF YOU HAVE OR ARE IN THE PROCESS OF OBTAINING DISCHARGE OF THE DEBT FROM A BANKRUPTCY COURT, THIS DOCUMENT IS NOT AN ATTEMPT TO COLLECT A DEBT, BUT ONLY ENFORCEMENT OF LIEN RIGHTS AGAINST THE PROPERTY.**

_ORNOD (07/07)_

2

**EXHIBIT E**

Loan Number: 3034

Date: APRIL 9, 2007

Property Address: 3385 QUAIL RIDGE COURT, WEST LINN, OREGON 97068

## EXHIBIT "A"

### LEGAL DESCRIPTION

SEE PRE
A.P.N. #: 21E36BB-01300

LOT 187 AND PART OF LOT 186, "CASCADE SUMMIT NO. 6" IN THE NORTHWEST QUARTER OF SECTION 36, TOWNSHIP 2 SOUTH, RANGE 1 EAST, OF THE WILLAMETTE MERIDIAN, IN THE CITY OF WEST LINN, COUNTY OF CLACKAMAS AND STATE OF OREGON, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT A 5/8 INCH IRON ROD WITH A RED PLASTIC CAP SCRIBED "CENTERLINE CONCEPTS, INC." (HEREINAFTER REFERRED TO AS "A 5/8 INCH IRON ROD WITH A CCI CAP") LYING ON THE NORTH LINE OF SAID LOT 186, SAID IRON ROD BEING NORTH 53°30'52" WEST 121.68 FEET FROM A 5/8 INCH IRON ROD WITH A YELLOW PLASTIC CAP SCRIBED "OTAK INC." (HEREINAFTER REFERRED TO AS "A 5/8 INCH IRON ROD WITH AN OTAK CAP") MARKING THE NORTHEAST CORNER OF SAID LOT 186; THENCE SOUTH 13°51'43" WEST 57.03 FEET TO A 5/8 INCH IRON ROD WITH A CCI CAP; THENCE SOUTH 25°52'37" WEST 34.38 FEET TO A 5/8 INCH IRON ROD WITH A CCI CAP; THENCE SOUTH 38° 02'29" WEST 73.62 FEET TO A 5/8 INCH IRON ROD WITH A CCI CAP LYING ON THE NORTHEASTERLY RIGHT OF WAY LINE OF QUAIL RIDGE COURT AND MARKING THE START OF A 176.50 FOOT RADIUS CURVE, CONCAVE NORTHEASTERLY; THENCE ALONG SAID RIGHT OF WAY LINE AND SAID CURVE, THROUGH A CENTRAL ANGLE OF 41°51'42" (WHICH CHORD BEARS NORTH 33°50'17" WEST 126.11 FEET) AN ARC DISTANCE OF 128.96 FEET TO A 5/8 INCH IRON ROD WITH AN OTAK CAP MARKING THE POINT OF TANGENCY OF SAID CURVE; THENCE CONTINUING ALONG SAID RIGHT OF WAY LINE, NORTH 12°54'26" WEST 47.43 FEET TO A 5/8 INCH IRON ROD WITH A OTAK CAP MARKING THE START OF A 40.50 FOOT RADIUS CURVE CONCAVE EASTERLY; THENCE, ALONG SAID CURVE AND CONTINUING ALONG SAID RIGHT OF WAY LINE, THROUGH A CENTRAL ANGLE OF 07°03'35" (WHICH CHORD BEARS NORTH 09°22'38" WEST 4.99 FEET), AN ARC DISTANCE OF 4.99 FEET TO A 5/8 INCH IRON ROD WITH AN OTAK CAP MARKING THE POINT OF TANGENCY OF SAID CURVE; THENCE CONTINUING ALONG SAID RIGHT OF WAY LINE, NORTH 05°50'51" WEST 16.47 FEET TO A 5/8 INCH IRON ROD WITH A CCI CAP MARKING THE MOST WESTERLY CORNER OF SAID LOT 187; THENCE LEAVING SAID RIGHT OF WAY LINE NORTH 68°55'58" EAST ALONG THE NORTHWESTERLY LINE OF SAID LOT 187, 84.19 FEET TO AN 5/8 INCH IRON ROD WITH A OTAK CAP MARKING THE MOST NORTHERLY CORNER OF SAID LOT 187; THENCE SOUTH 53°30'52" EAST ALONG THE NORTHEASTERLY LINE OF SAID LOT 187 AND 186, 97.98 FEET TO THE POINT OF BEGINNING.

TOGETHER WITH AN EASEMENT FOR INGRESS AND EGRESS OVER TRACT "FF" AS DELINEATED ON THE RECORDED PLAT.

DocMagic *eForms* 800-643-1392
www.docmagic.com

EXHIBIT E

After recording return to:

**RECONTRUST COMPANY, N.A.**
**400 COUNTRYWIDE WAY SV-35**
**SIMI VALLEY, CA 93065**

Until a change is requested all tax statements
shall be sent to the following address:

Same as above

Clackamas County Official Records
Sherry Hall, County Clerk          **2010-057959**

$92.00

01434582201000579590050050

09/16/2010 12:43:04 PM

D-DTR          Cnt=2  Stn=6  KARLYNWUN
$25.00 $5.00 $16.00 $16.00 $10.00 $20.00

## TRUSTEE'S DEED

T.S. No. 10 -0018763
Consideration: $900,000.00

THIS INDENTURE, made September 8, 2010 between RECONTRUST COMPANY, N.A. hereinafter called Trustee, and HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE HOLDERS OF DEUTSCHE ALT-A SECURITIES MORTGAGE LOAN TRUST,SERIES 2007-1 MORTGAGE PASS-THROUGH CERTIFICATES hereinafter called the second party;

### WITNESSETH

RECITALS:  GARY R HENIN AND KATHY J HENIN, AS TENANTS BY THE ENTIRETY, as grantor, executed and delivered to: FIRST AMERICAN TITLE, as Trustee, for the benefit of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS. INC, as beneficiary, a certain Trust Deed dated 04/09/2007, duly recorded on 04/16/2007 in the mortgage records of Clackamas County,  or as Recorder's fee/file/instrument/microfilm/reception No. 2007-032555. .

In said Trust Deed the real property therein and hereinafter described was conveyed by said grantor to said Trustee to secure, among other things, the performance of certain obligations of the grantor to the said beneficiary.  The said grantor thereafter defaulted in grantor's performance of the obligations secured by said Trust Deed as stated in the notice of default hereinafter mentioned and such default still existed at the time of the sale hereinafter described.

By reason of said default, the owner and holder of the obligations secured by said Trust Deed, being the beneficiary therein named, or beneficiary's· successor in interest, declared all sums so secured immediately due and owing; a notice of default, containing an election to sell the said real property and to foreclose said Trust Deed by advertisement and sale to satisfy grantor's said obligations was recorded in the mortgage records of said county on 02/18/2010, thereof or as fee/file/instrument/microfilm/reception No. 2010-010518 to which reference is now made.

After the recording of said notice of default, as aforesaid, RECONTRUST COMPANY, N.A., the undersigned Trustee gave notice to the grantor(s) and occupant(s) as required by and in accordance with Sections 20 and 21 of Chapter 19, Oregon Laws 2008, (amending and/or supplementing ORS 86.705 to 86.795) by mailing said notice by both first class and certified mail with return receipt requested. The mailing of said notices is shown by an affidavit of mailing recorded prior to sale date. In addition, the undersigned trustee gave notice of the time for and place of sale of said real property as fixed by the Trustee and as required by law; copies of the Trustee's Notice of Sale were served pursuant to ORCP

**EXHIBIT F**

**TRUSTEE'S DEED**

T.S. No. 10 -0018763

7D.(2) and 7D.(3) or mailed by both first class and certified mail with return receipt requested, to the last-known address of the persons or their legal representatives, if any, named in ORS 86.740 (1) and (2)(a), at least 120 days before the date the property was sold, and the Trustee's Notice of Sale was mailed by first class and certified mail with return receipt requested, to the last-known address of the guardian, conservator, administrator, or executor of any person named in ORS 86.740 (1), promptly after the Trustee received knowledge of the disability, insanity or death of any such person; the Notice of Sale was served upon occupants of the property described in the Trust Deed in the manner in which a summons is served pursuant to ORCP 7D.(2) and 7D.(3) at least 120 days before the date the property was sold, pursuant to ORS 86.750(1). If the foreclosure proceedings were stayed and released from stay, copies of an Amended Notice of Sale in the form required by ORS 86.755(6) were mailed by registered or certified mail to the last-known address of those persons listed in ORS 86.740 and 86.750(1) and to the address provided by each person who was present at the time and place set for the sale which was stayed within 30 days after the release from stay. Further, the Trustee published a copy of said notice of sale in a newspaper of general circulation in each county in which the said real property is situated, once a week for four successive weeks; the last publication of said notice occurred more than twenty days prior to the date of such sale. The mailing, service and publication of said notice of sale are shown by one or more affidavits or proof of service duly recorded prior to the date of sale in the records of said county, together with the said notice of default and election to sell and the Trustee's notice of sale, being now referred to and incorporated in and made a part of this Trustee's Deed as fully as if set out herein verbatim. The undersigned Trustee has no actual notice of any person, other than the persons named in said affidavits and proofs as having or claiming a lien on or interest in said described real property, entitled to notice pursuant to ORS 86.740 (1)(b) or (1)(c).

Pursuant to the said notice of sale, the undersigned Trustee on 09/08/2010, at the hour of 10:00 AM, of said day, in accordance with the standard of time established by ORS 187.110, and at the place so fixed for sale, as aforesaid, in full accordance with the laws of the state of Oregon and pursuant to the powers conferred upon said Trustee by said Trust Deed, sold said real property in one parcel at public auction to the said second party for the sum of $900,000.00, said second party being the highest and best bidder at such sale and said sum being the highest and best sum bid for said property. The true and actual consideration paid for this transfer is the sum of $900,000.00.

NOW, THEREFORE, in consideration of the said sum so paid by the second party in cash, the receipt whereof is acknowledged, and by the authority vested in said Trustee by the laws of the State of Oregon and by said Trust Deed, the Trustee does hereby convey unto the second party all interest which the grantor had or had the power to convey at the time of the grantor's execution of said Trust Deed, together with any interest the said grantor or grantor's successors in interest acquired after the execution of said Trust Deed in and to the following described real property to-wit:

PLEASE SEE ATTACHED LEGAL DESCRIPTION

TO HAVE AND TO HOLD the same unto the second party, the second party's heirs, successors-in-interest and assigns forever.

In constructing this instrument and wherever the context so requires, the singular includes the plural; the word "grantor" includes any successor-in-interest to the grantor as well as each and all other persons owing an obligation, the performance of which is secured by said Trust Deed; the word "Trustee"

ORTD (06/08)

**EXHIBIT F**

**TRUSTEE'S DEED**

T.S. No. 10 -0018763

includes any successor Trustee, the word "beneficiary" includes any successor-in-interest of the beneficiary first named above, and the word "person" includes corporation and any other legal or commercial entity.

BY WITNESS WHEREOF, the undersigned Trustee has hereunto executed this document, if the undersigned is a corporation, it has caused its corporate name to be signed and its seal affixed hereto by an officer duly authorized thereunto by order of its Board of Directors.

THIS INSTRUMENT WILL NOT ALLOW USE OF THE PROPERTY DESCRIBED IN THIS INSTRUMENT IN VIOLATION OF APPLICABLE LAND USE LAWS AND REGULATIONS. BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON ACQUIRING FEE TITLE TO THE PROPERTY SHOULD CHECK WITH THE APPROPRIATE CITY OR COUNTY PLANNING DEPARTMENT TO VERIFY APPROVED USES.

RECONTRUST COMPANY, N.A.

DARLENE R. GOMEZ
ASSISTANT SECRETARY

State of California
County of _____VENTURA_____

Subscribed and sworn to (or affirmed) before me on this 9th day of _____, 20 10 , by _____DARLENE R. GOMEZ, personally known to me or proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

(seal)

AHMAD AFZAL
COMM. # 1744009
NOTARY PUBLIC - CALIFORNIA
VENTURA COUNTY
My Comm. Expires May 7, 2011

Signature _____
AHMAD AFZAL

ORTD (06/08)

**EXHIBIT F**

ORDER NO: 100083025                                                POLICY NO: 27-195-94-60970

## EXHIBIT "A"

REF. NO.: 10-0018763

LOT 187 AND PART OF LOT 186, "CASCADE SUMMIT NO. 6" IN THE NORTHWEST QUARTER OF SECTION 36, TOWNSHIP 2 SOUTH, RANGE 1 EAST, OF THE WILLAMETTE MERIDIAN, IN THE CITY OF WEST LINN, COUNTY OF CLACKAMAS AND STATE OF OREGON, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT A 5/8 INCH IRON ROD WITH A RED CAP SCRIBED "CENTERLINE CONCEPTS, INC." (HEREINAFTER REFERRED TO AS "A 5/8 INCH IRON ROD WITH A CCI CAP") LYING ON THE NORTH LINE OF SAID LOT 186, SAID IRON ROD BEING NORTH 53°30'52" WEST 121.68 FEET FROM A 5/8 INCH IRON ROD WITH A YELLOW PLASTIC CAP SCRIBED "OTAK INC." (HEREINAFTER REFERRED TO AS "A 5/8 INCH IRON ROD WITH AN OTAK CAP") MARKING THE NORTHEAST CORNER OF SAID LOT 186; THENCE SOUTH 13°51'43" WEST 57.03 FEET TO A 5/8 INCH IRON ROD WITH A CCI CAP; THENCE SOUTH 25°52'37" WEST 34.38 FEET TO A 5/8 INCH IRON ROD WITH A CCI CAP; THENCE SOUTH 38° 02'29" WEST 73.62 FEET TO A 5/8 INCH IRON ROD WITH A CCI CAP LYING ON THE NORTHEASTERLY RIGHT OF WAY LINE OF QUAIL RIDGE COURT AND MARKING THE START OF A 176.50 FOOT RADIUS CURVE, CONCAVE NORTHEASTERLY; THENCE ALONG SAID RIGHT OF WAY LINE AND SAID CURVE, THROUGH A CENTRAL ANGLE OF 41°51'42" (WHICH CHORD BEARS NORTH 33°50'17" WEST 126.11 FEET) AN ARC DISTANCE OF 128.96 FEET TO A 5/8 INCH IRON ROD WITH A OTAK CAP MARKING THE START OF A 40.50 FOOT RADIUS CURVE CONCAVE EASTERLY; THENCE, ALONG SAID CURVE AND CONTINUING ALONG SAID RIGHT OF WAY LINE, THROUGH A CENTRAL ANGLE OF 07°03'35" (WHICH CHORD BEARS NORTH 09°22'38" WEST 4.99 FEET), AN ARC DISTANCE OF 4.99 FEET TO A 5/8 INCH IRON ROD WITH AN OTAK CAP MARKING THE POINT OF TANGENCY OF SAID CURVE; THENCE CONTINUING ALONG SAID RIGHT OF WAY LINE, NORTH 05°50'51" WEST 16.47 FEET TO A 5/8 INCH IRON ROD WITH A CCI CAP MARKING THE MOST WESTERLY CORNER OF SAID LOT 187; THENCE LEAVING SAID RIGHT OF WAY LINE NORTH 68°55'58" EAST ALONG THE NORTHWESTERLY LINE OF SAID LOT 187, 84.19 FEET TO AN 5/8 INCH IRON ROD WITH A OTAK CAP MARKING THE MOST NORTHERLY CORNER OF SAID LOT 187; THENCE SOUTH 53°30'52" EAST ALONG THE NORTHEASTERLY LINE OF SAID LOT 187 AND 186, 97.98 FEET TO THE POINT OF BEGINNING.

TOGETHER WITH AN EASEMENT FOR INGRESS AND EGRESS OVER TRACT "F" AS DELINEATED ON THE RECORDED PLAT.

FNTIC FORM 27-195-94 (3/94)          Fidelity National Title Insurance Company          GUARANTEE – COMBINATION FORM
Reprinted (7/97)                                                                      OREGON

7

EXHIBIT F



After Recording Return to:
ReconTrust Company
1800 Tapo Canyon Road
Simi Valley, Ca. 93063

### AFFIDAVIT OF NON-MILITARY SERVICE

**Hollie Ortiz** being first duly sworn, deposes and says:

That the undersigned Affiant, is over the age of eighteen years and competent to make this affidavit, and says that on the scheduled date of the Trustee's sale and for a period of 120 days prior thereto, that to the best of my knowledge

### Gary R Henin & Kathy J Henin

not and neither is, in the military service of the United States, within the meaning of the Service Members Civil Relief Act, as amended; that neither person is a member of the United States Marine Corps, Women's Reserve, or Women's Army Auxiliary Corps or Women's Army Corps (WACS), or Women's Coast Guard Reserve (SPARS), or being educated under the supervision of the United States preliminary to induction into the Military Service or under orders to report for induction under the Selective Training and Service Act of 1940, as amended, or as a member of the Enlisted Reserve Corps under orders to report for military service of an American Citizen serving with the forces of any nation allied with the United States in the prosecution of a war, or in the Federal Service or active duty as a member of the Army of the United States, or the United States Navy of the Marine Corps, or the Coast Guard, or as an officer of the Public Health Service within the purview of the Service Members Civil Relief Act of 1940, as amended.

That this affidavit is made for the purpose of enabling, without leave of court first obtained, the Trustee to sell certain property to be sold under the terms of a deed of trust pursuant to the power of sale contained therein.

DATED: SEP 0 8 2010

BAC HOME LOANS SERVICING LP

By: _____

**Hollie Ortiz**
**Team Member**

STATE OF CALIFORNIA      )
                                          )   ss
COUNTY OF VENTURA       )

Subscribed and sworn to (or affirmed) before me on this ___ day of _____, 20__, by Hollie Ortiz, personally known to me or proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

AHMAD AFZAL
COMM. # 1744009
NOTARY PUBLIC - CALIFORNIA
VENTURA COUNTY
My Comm. Expires May 7, 2011

Notary Public for California
My commission expires: MAY 0 7 2011

AHMAD AFZAL

EXHIBIT F